**UNITED STATES**

v.

**Technical Sergeant Joseph G. SNODGRASS, FR587–09–3810, United States Air Force.**

**ACM 29879.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 Nov. 1991.

Decided 3 June 1993.

Appellate Counsel for the Appellant: Major George F. May (argued), Colonel Terry J. Woodhouse, Major Alice M. Kottmyer, and Major Mary C. Yastishock.

Appellate Counsel for the U.S.: Lieutenant Colonel Jeffery T. Infelise (argued) and Colonel Richard L. Purdon.

Before DIXON, McLAUTHLIN, and HEIMBURG, Appellate Military Judges.

## OPINION OF THE COURT

HEIMBURG, Judge:

In a bench trial, appellant pleaded guilty to premeditated murder, escape from confinement, assault and battery on a security policeman, larceny and wrongful appropriation.[1] Appellant has asserted nine errors;

---

1. His approved sentence is a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to E–1.

we find admission of one prosecution exhibit erroneous, but affirm the findings and sentence.

## GUILTY PLEA TO PREMEDITATED MURDER

■ Appellant was charged with premeditated murder under Article 118, UCMJ, based on evidence that he paid $150 and 1,000 pesos to have his wife murdered. After the charge was investigated pursuant to Article 32, UCMJ, it was referred as a capital offense on 18 June 1991. On 10 October 1991, appellant submitted an offer for a pretrial plea agreement, which was accepted by the convening authority on 23 October 1991. Under the terms of that agreement, appellant offered to plead guilty to all charges, with minor exceptions not relevant to this issue, in return for agreement by the convening authority to

> withdraw the special instruction in the referral dated 18 June 91 as written and to substitute the following special instruction:
>
> "shall be referred to trial as a capital case. However, in the event a plea of guilty to premeditated murder is accepted by the military judge, the case will be tried as a non-capital case." The accused and his counsel understand and agree that in the event the accused does not enter a plea of guilty to premeditated murder or the military judge does not accept that plea, at that point, the case will proceed as a capital case.

Appellant asserts his pleas to all charges were improvident because his guilty plea to murder occurred while he still faced the death penalty, and thus was a nullity due to the operation of Article 45(b), UCMJ.[2] He maintains his guilty plea was "received" while the death penalty remained a possible sentence, and this possibility re-

quires us to rule his pleas a nullity, whether or not he can point to actual prejudice. Appellant argues a military judge may accept a guilty plea to a premeditated murder charge, consistent with Article 45(b), only if the referral indorsement directs the offense be treated as non-capital. *United States v. Wheeler*, 10 U.S.C.M.A. 646, 28 C.M.R. 212 (1959). Although the convening authority could have directed the charge be treated as non-capital after accepting appellant's offer of a pretrial agreement, appellant asserts, he was not legally permitted to use a contingent referral indorsement conditioned on appellant's successful entry of a guilty plea.

Aware of the issue, the trial judge advised appellant as follows immediately after entry of appellant's pleas:

> MJ: Thank you, Counsel. Sergeant Snodgrass, your counsel has indicated that you are pleading guilty to all the charges and specifications....

> What I want to do at this point is to discuss what I've already been told about, and that is the pretrial agreement, before we start talking about the offenses themselves. I'm sure that your counsel has discussed with you, but for the sake of making sure that you understand, ordinarily a judge may not accept a plea of guilty to an offense for which a capital punishment or a death sentence may be imposed.

> It's my understanding, after conference with your counsel, as well as the government's counsel, that in this case there has been an agreement made through a PTA, or a pretrial agreement, between yourself and your counsel and the government counsel and the convening authority that will change the potential penalty in this case, and I want to go

---

2. A plea of guilty by the accused may not be received to any charge or specification alleging an offense for which the death penalty may be adjudged. With respect to any other charge or specification to which a plea of guilty has been made by the accused and accepted by the military judge or by a court-martial without a military judge, a finding of guilty of the charge or specification may, if

permitted by regulations of the Secretary concerned, be entered immediately without vote. This finding shall constitute the finding of the court unless the plea of guilty is withdrawn prior to announcement of the sentence, in which event the proceedings shall continue as though the accused had pleaded not guilty. Article 45(b), UCMJ, 10 U.S.C. 845(b) (1988).

through that now. Otherwise, I cannot accept your pleas and will be required that we have a trial with members.

Do you understand all of that?

ACC: Yes, your Honor.

After completing the guilty plea inquiry, the trial judge made the following findings:

MJ: I find, Sergeant Snodgrass, that you fully understand this pretrial plea agreement, and I find that it is in substantial compliance with the requirements of applicable regulation and case law, and I find that it is not contrary to public policy or my own notions of fairness. Additionally, I find that if it has not happened before, it has happened at this point that this case is referred, at this point, as a noncapital case. Therefore, your pretrial agreement is accepted.

I further find that the accused has knowingly, intelligently, and consciously waived the following constitutional rights.... Finally, I find that the accused's pleas are voluntary and have an adequate factual basis.

Accordingly, the pleas of guilty are accepted and, again, based on the conversations with counsel and based on the conversations with the accused, I find it is the intent of all parties, more particularly the convening authority's intent, that this case is now a noncapital case and, as a result, I, as the military judge, under the Manual for Courts–Martial, have the authority to accept a plea of guilty to the charge of premeditated murder.

Counsel, any concerns about those findings?

TC: No, your Honor. We agree.

DC: No, your Honor.

Like counsel, we have been unable to find any prior case in which a pretrial plea agreement such as this was used. There is a logical appeal to appellant's position that his pleas violated the express terms of Article 45(b), UCMJ. The contingent terms of the pretrial plea agreement leave us with some intriguing questions: did his case re-main capital until *after* appellant's pleas were accepted, or was the trial judge correct that the case was non-capital just *before* he accepted appellant's pleas? To us, it is obvious that a murder charge under Article 118(1), UCMJ, may be referred as capital or non-capital, but not both. By using a "springing" contingency, however, the referral indorsement here tried to cover both possibilities and made murky something which ought to be clear: the exact instructions which accompany referral of a murder charge.[3]

Nevertheless, not every procedural violation of a statute creates prejudicial error. Article 59(a), UCMJ. Regardless of how we answer the intriguing question above as to when the contingent referral made the murder charge non-capital, the ultimate effect is not in doubt. Once appellant entered guilty pleas, he was in a situation where "the death penalty may *[not]* be adjudged." *Cf.*, Article 45(b), UCMJ. According to his responses to the military judge during the providence inquiry, this pretrial plea agreement originated with appellant. Having bargained for and received non-capital treatment in a plea bargain, appellant is not in a position to complain about a violation of Article 45(b). Under the circumstances of this case, any violation of the prohibition of Article 45(b) was harmless.

## SENTENCING EVIDENCE

Appellant asserts three errors concerning admission of sentencing evidence: in two, he argues the trial judge erred in admitting exhibits which unduly prejudiced his case; in the third, he argues the judge erred in denying admission of defense exhibits which showed the disparate treatment of his co-actor in Philippine courts.

### (1) GRUESOME PHOTOGRAPH OF THE VICTIM?

Prosecution Exhibit 18 is a color photograph of the victim taken shortly after her death, slumped behind the wheel of

---

**3.** Referral, the "order of a convening authority that charges against an accused will be tried by a specified court-martial," should clearly state the disposition of the charges. R.C.M. 601(a).

Instructions, if included in the indorsement, should also be easily understood. R.C.M. 601(e)(1).

a van. Appellant asserts admission of this exhibit was prejudicial error because it was highly inflammatory, but of little relevance. He asserts the victim's injuries were completely described by the autopsy report, which was in evidence. If additional information about the injuries were needed, he adds, it could as easily have been verbally described for the record, avoiding the "shock value" of the color photograph.

Prosecution Exhibit 18 is the only one of four photographs of the victim offered by the prosecution which the trial judge allowed in evidence. The judge ruled the photograph was relevant to the facts and circumstances of the case in that it helped explain some evidence, corroborated other evidence, and clarified the statements of witnesses. He found the probative value of the exhibit not outweighed by the danger of unfair prejudice to the appellant. Mil.R.Evid. 403.

A military trial judge has wide discretion to determine whether the probative value of a piece of evidence is substantially outweighed by the danger of unfair prejudice. Mil.R.Evid. 403; *United States v. Yanke*, 23 M.J. 144, 145 (C.M.A.1987). The test on appeal of the judge's decision is abuse of discretion. *Yanke* at 145. Reviewing Prosecution Exhibit 18, we find it relevant on sentencing and not unfairly prejudicial. The trial judge did not abuse his discretion admitting this photograph.

(2) EXCLUSION OF ESSENTIAL DEFENSE EXHIBITS?

■ Trial defense counsel offered, unsuccessfully, three Philippine court orders related to Ms. Damalia, a co-actor in the murder of appellant's wife. The first evidenced her conviction of murder as an accomplice with mitigating circumstances on July 26, 1991 (Defense Exhibit A); the second referred her request for probation to the local Probation and Parole Administration Office on September 17, 1991 (Defense Exhibit B), and the third directed her release from confinement on her recognizance on September 17, 1991 (Defense Exhibit C). Trial defense counsel urged their admissibility on two grounds: they were

matters in mitigation under R.C.M. 1001(c)(1)(B) and showed Ms. Damalia's bias and motive to lie under Mil.R.Evid. 608(c). Before this Court appellant adds a third basis: constitutional due process of law, citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979).

The trial judge ruled the exhibits inadmissible under R.C.M. 1001. As for Mil. R.Evid. 608(c), he announced he "will recognize that the witness has been convicted and the offense for which the conviction did occur ... the offense of homicide as an accomplice with mitigating circumstances." In a later clarification, the judge said he would "recognize" the conviction under Mil.R.Evid. 609(a), although he never admitted Defense Exhibit A into evidence. He stated Ms. Damalia's sentence disposition was not relevant, citing *United States v. Rojas*, 15 M.J. 902 (N.M.C.M.R.1983).

Appellant has intertwined two concepts in arguing that these exhibits should have been considered by the trial court. One is the concept of impeachment for bias. Relying on *United States v. Colcol*, 16 M.J. 479 (C.M.A.1983), appellant argues Ms. Damalia, not appellant, was the "ringleader" of the criminal conspiracy to kill appellant's wife, and the fact that she "got off practically 'scot-free'" was a "very strong motive" to lie about the extent of appellant's involvement. Unfortunately for appellant, unlike the situation in *Colcol*, he can show no nexus between Ms. Damalia's light treatment and his conviction. In *Colcol*, the chief prosecution witness was to receive an administrative discharge after testifying, a situation the Court of Military Appeals deemed "[f]or all practical purposes ... equivalent to a promise of transactional immunity." *Colcol*, 16 M.J. at 483. Here, there is no showing that the treatment Ms. Damalia received from Philippine authorities was in any manner related to her testimony against appellant, and we are not inclined to presume any such relationship.

The second concept argued by appellant is sentence disparity. No doubt appellant

had a right to present matters in extenuation and mitigation at trial. Matters in mitigation include those matters which "furnish grounds for a recommendation of clemency." R.C.M. 1001(c)(1)(B). Sentence comparison, however, does not normally furnish grounds for post-trial relief, *United States v. Olinger*, 12 M.J. 458, 460 (C.M.A.1982), and we are aware of no case which has permitted sentence comparison to be used at trial.

■ We do not believe sentence comparison, as such, is an appropriate consideration at trial. Even during post-trial review of sentence appropriateness, sentence comparison is limited to a very few exceptional circumstances. The general rule is that the appropriateness of an accused's sentence is judged solely on the individual circumstances of the case, giving due regard to both the offense and the offender. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). The one recognized exception is limited to "highly disparate sentences in closely related cases." *Olinger*, 12 M.J. at 460. *See, United States v. Thorn*, 36 M.J. 955 (A.F.C.M.R.1993); *United States v. Kent*, 9 M.J. 836 (A.F.C.M.R.1980). Before this exception may be applied, three requirements must be met: a direct correlation between the offenses and offenders; existence of highly disparate sentences; and, no good reason for the disparity. *Thorn*, 36 M.J. at 960; *Kent*, 9 M.J. at 838–39. It is highly likely the first two requirements are met in this case. Appellant and Ms. Damalia were jointly involved in the murder of appellant's wife. Without deciding, we assume Defense Exhibits A, B, and C show a high disparity in their sentences. The third prong, however, presents an insurmountable obstacle to appellant. Ms. Damalia, a Philippine citizen, was tried under the laws and in the courts of her native country. We know of no case in which sentence comparison has been found persuasive when one of the offenders was tried in a foreign court. Moreover, we are inclined to consider the difference in sovereigns sufficient reason for any disparity.

Appellant cites *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), as added support for admissibility of these exhibits. *Green v. Georgia* applied the rule of *Chambers v. Mississippi*, 410 U.S. 284 (1973), to the "unique circumstances" of a capital murder case. Green and Moore were convicted of rape and murder in separate trials; both received a death sentence. At his sentence hearing, Green tried to prove he did not personally kill the victim, using the testimony of another witness that Moore confessed he, alone, fired the shots. Although this confession had been used against Moore, the trial judge ruled it inadmissible hearsay in Green's sentence hearing. The prosecutor then argued both Green and Moore fired shots into the victim's body. The Supreme Court reversed, saying the proffered testimony was "highly relevant to a critical issue," there were "substantial reasons" to "assume its reliability," and "the hearsay rule may not be applied mechanistically to defeat the ends of justice," citing *Chambers. Green*, 442 U.S. at 97, 99 S.Ct. at 2151.

We do not find *Green v. Georgia* supportive of appellant's position. Unlike the evidence sought to be introduced by Green, the exhibits appellant offered relate to sentence comparison, not generally recognized as "highly relevant" in a sentence hearing. Also, unlike *Green v. Georgia*, the "critical issue" of the death penalty is not present in appellant's case. We find no abuse of discretion by the trial judge in excluding these exhibits.

(3) ACCUSING VOICE FROM THE GRAVE, OR FAIR REBUTTAL?

■ Defense sentence matters included an eleven-page, typewritten unsworn statement and a brief, oral unsworn statement by appellant. Trial counsel offered two letters written by appellant's wife to rebut appellant's brief comments that, during times when they separated due to marital difficulties, his wife did not want monetary support. Trial defense counsel objected that the letters contained no true rebuttal, because they related to different times than mentioned by appellant in his unsworn

statement. Moreover, since the letters were written when appellant and his wife were having severe marital difficulties, counsel argued, they contained many angry and anguished statements—"Joe-bashing," he called it—by a "voice from the grave." The judge admitted Prosecution Exhibit 26, a three-and-one-half page, typewritten, undated letter, ruling it rebutted appellant's comments about his wife's desire for financial support.

We have reviewed Prosecution Exhibit 26 and are persuaded its admission was error. Although there is some limited rebuttal material within this lengthy exhibit, it also contains many comments which, in the context of this murder trial, are highly inflammatory. The letter accuses appellant of "destroying" her dream of a normal family life; of "manipulating" her into signing a "*damned* post nuptial agreement;" of sewing "seeds of confusion and unworthiness which I allowed to nearly destroy my confidence in myself;" and of playing a "sick game" with her. It goes on to blame appellant for not giving her enough support to feed the children, and ends by claiming she "cannot imagine that there could be any pain worse than what I am experiencing at this moment and have experienced for the past 10 months. (Actually nearly 4 years)." Applying the test of Mil.R.Evid. 403, we find the probative value of the exhibit "substantially outweighed by the danger of unfair prejudice." Even in a trial before a military judge alone, admission of Prosecution Exhibit 26 was an abuse of discretion. We will reassess the sentence.

### PROSECUTION SENTENCE ARGUMENT

Despite his guilty pleas, appellant's trial strategy was to minimize his responsibility for the murder of his wife, placing most of the responsibility on Luzviminda ("Lucy") Damalia. When he arrived in the Philippines, appellant and his wife were separated. He had an "affair" with Ms. Damalia, and, eventually, she moved into his apartment and took care of his children. Appellant asserted Lucy was jealous of his wife and planted the idea of murder in his mind.

While he admitted giving Ms. Damalia money so she could pay for the murder, he said his role was relatively passive: Ms. Damalia made the plans, and he did not know when, where or how it was to be done. He denied any financial motive for the murder, stating he agreed to Lucy's plan "out of anger and fear of losing the kids and my family heirlooms" in a divorce.

The prosecution painted a much different picture of appellant's involvement in the murder. Using depositions of Ms. Damalia and her uncle, Felix Sulayao, one of the men who participated in the murder, the prosecution showed appellant to be the schemer who plotted his wife's death. In addition to marital problems, there was evidence of a financial motive, as appellant was deeply in debt. His debt consolidation loan, with a balance of $4,500, pledged as security the proceeds of a $56,000 note due him in 1993. Just before the murder, appellant purchased $250,000 in life insurance on his wife, in addition to $200,000 already in effect.

■ Not surprisingly, trial counsel's closing argument touched on appellant's financial motives for the murder:

The biggest lie, though, and the one that no one should ever believe in this case is that this was all Lucy's idea and that he only committed to this in late February right before Julie was actually killed. This was a man who was far in debt anywhere from $13,000 to $22,000, as we've heard through the testimony. He had a $56,000 promissory note that was coming due, and whether or not a lawyer back in Mississippi, Mr. [Y], will tell us that the law would not allow the accused to forfeit that full $56,000, that's not the issue here. What's important is what this accused thought. He saw himself possibly losing $56,000—

Trial defense counsel objected that argument regarding appellant's state of mind was not supported by any evidence. The trial judge overruled the objection, commenting that "you're allowed to make reasonable assumptions." Appellant asserts this ruling was prejudicially erroneous, be-

cause the legal standard limits comments to matters in evidence and "reasonable inferences."

The Rules for Courts–Martial do not set out a standard for argument on the evidence during presentence proceedings as they do for closing argument on findings. *Compare* R.C.M. 1001(g) and R.C.M. 919(b). Nevertheless, we think the issue is not in doubt. The standards of the profession require a prosecutor to limit argument to reasonable comment on the evidence, including inferences which may be drawn therefrom. Air Force Standards for Criminal Justice 3–5.8 (1989).[4] Faced with objection to trial counsel's argument, the trial judge used the term, reasonable "assumptions," rather than reasonable *inferences*, but obviously meant the latter. More to the point, we have reviewed trial counsel's argument ourselves. Although no direct evidence supported trial counsel's assertion that appellant believed he would lose the $56,000, his argument was a plausible inference from the evidence. We find no prejudice to appellant's substantial rights. Article 59(a), UCMJ.

## OTHER ASSERTED ERRORS

Appellant has assigned four other errors. He argues his pleas of guilty to larceny and wrongful appropriation were improvident, the staff judge advocate's recommendations should have been served personally on him, and his sentence is too severe. We find no merit in any of these assigned errors.

Having found error in the admission of Prosecution Exhibit 26, we must consider the impact on the sentence. We are confident we can determine the sentence which would have been adjudged in appellant's case had the offending exhibit not been admitted. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986); *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A.

1985). Without Prosecution Exhibit 26, we find the court nonetheless would have sentenced appellant to the sentence adjudged. We conclude the findings are correct in law and fact, and the sentence, as reassessed, is appropriate. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Chief Judge DIXON and Senior Judge McLAUTHLIN concur.

---

**4.** Our predecessor, the Air Force Board of Review, applied this rule to sentence arguments as early as 1954. *United States v. Weller*, 18 C.M.R. 473, 483 (A.F.B.R.1954). The Court of Military Appeals affirmed the application of the basic rules of "fair comment" to presentence proceedings in the same case which affirmed the right of a trial counsel to argue for an appropriate sentence. *United States v. Olson*, 7 U.S.C.M.A. 242, 22 C.M.R. 32, 36 (1956).