**UNITED STATES**

v.

**Jamie L. HANSEN, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 200100086.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 14 March 2000.

Decided 14 Jan. 2003.

Maj Eric P. Gifford, USMC, Appellate Defense Counsel.

Maj Patricio A. Tafoya, USMC, Appellate Government Counsel.

Before OLIVER, Senior Judge, HARRIS, and COHEN, Appellate Military Judges.

COHEN, Judge:

A military judge, sitting as a general court-martial, convicted Appellant, pursuant to his pleas, of carnal knowledge and sodomy in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925. On 14 March 2000, Appellant was sentenced to confinement for 16 months, reduction to pay grade E–1, total forfeiture of pay and allowances, and a bad-conduct discharge. On 28 November 2000, the convening authority approved the sentence, suspended all confinement in excess of 15 months for a period of 6 months from the date of the action in accordance with a pretrial agreement, and, with the exception of the bad-conduct discharge, ordered the sentence executed.

After carefully considering the record of trial, Appellant's three assignments of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Statement of Facts

The providence inquiry, including a stipulation of fact, Prosecution Exhibit 1, established the following. Appellant, a 22–year–old Marine, sometime prior to June 1999 placed an advertisement on the Internet, seeking to meet women in the local Havelock, North Carolina, area. Beth D. responded to the advertisement in mid-June 1999. The two communicated through e-mail, and Beth D. called Appellant after he had given her his telephone number.

When the topic of sex arose in one conversation, Beth D. informed Appellant that she had not had sex before, but that she was curious.[1] Beth D. invited Appellant to visit her home and told him to park down the road and come to her window. He complied and they met for the first time. They agreed he should visit in this fashion each time he visited.

Upon first meeting Beth D., Appellant noticed she looked "young," but Appellant did not recall asking how old she was. After several minutes of kissing, Appellant crawled out of the window and left. Appellant never did meet Beth D.'s parents.

For the next several weeks, Appellant and Beth D. communicated by e-mail and telephone. About 3 weeks later, Appellant again came to Beth D.'s window at night. During his visit, Beth D. performed consensual fellatio on Appellant until he ejaculated.

In about mid-August, Appellant visited Beth D. in the same fashion. This time Appellant asked Beth D. how old she was. She responded that she was 15. Appellant then performed consensual cunnilingus on Beth D. before the two engaged in consensual intercourse.

After this occasion, Beth D. continued to telephone Appellant on a regular basis.

However, because she called so regularly, Appellant had his telephone disconnected. Still, Appellant visited Beth D. on two more occasions. In October 1999, the two engaged in consensual mutual oral copulation before also engaging in sexual intercourse. Then, in November, on his last visit with Beth D., Appellant performed consensual cunnilingus on Beth D. and the two indulged in consensual intercourse.

## Voluntariness of the Guilty Pleas

As Appellant contends and the Government does not contradict, the military judge inexplicably did not advise Appellant that by his guilty pleas Appellant would be waiving his rights of confrontation, of compulsory process, and against self-incrimination.[2] *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *United States v. Care,* 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

The Government relies, in part, on *United States v. Burton,* 21 C.M.A. 112, 115, 44 C.M.R. 166, 169, 1971 WL 12477 (1971). *Burton* is distinguishable, however, since the military judge's advice, while not using precise language (for example, referring to evidence vice witnesses) did advise the accused more than was done here. *Id.* at 115. Here, the military judge apparently skipped several pages of the approved Benchbook. Neither counsel brought the omission to the military judge's attention.[3]

In *United States v. Harris,* 26 M.J. 729 (A.C.M.R.1988), the Army court faced a similar circumstance and concluded that the military judge's inquiry did not establish an effective waiver. *Id.* at 733. In so doing, however, the Army court found the *dissent* in *Burton* more persuasive than the majority opinion and followed the dissent, *id.,* a choice we are not at liberty to pursue. *See, e.g.,*

---

1. Whether Beth D.'s statement that she had no previous sexual experience is true is not established in the record. At a minimum, Appellant would have had no reason to disbelieve her at the time she spoke with him. In a motion *in limine,* the Government essentially conceded that in the same general time frame as Appellant's offenses, Beth D. performed fellatio on two other Marines and engaged in "phone sex" with another. Appellate Exhibit II at 1.

2. The military judge did mention these rights in passing, indicating Appellant had "waived" them, just prior to his findings. Record at 69.

3. For a discussion of the responsibility of counsel, see *United States v. Harris,* 26 M.J. 729, 734 (A.C.M.R.1988).

*United States v. Allbery,* 44 M.J. 226, 227 (1996).

■ The first issue is the standard to apply in reviewing the providence of a guilty plea in which the military judge inadvertently neglects to render the required advice to an accused concerning the rights a guilty plea waives. The overwhelming weight of authority does not support the proposition that the Federal Constitution requires reversal when a military judge has failed to give explicit admonitions on each of the *Boykin/Care* rights. Rather, a guilty plea is valid if the record affirmatively shows that the plea was voluntary and intelligent under the totality of the circumstances. *See North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Most of the Federal circuit courts have expressly rejected a *per se* reversal rule. *See, e.g., United States v. Pricepaul,* 540 F.2d 417, 424–25 (9th Cir.1976); *see also Stinson v. Turner,* 473 F.2d 913, 916 (10th Cir.1973). "*Boykin* does not require specific articulation of each of the three rights waived by the guilty plea, as long as it is clear from the record that the plea was voluntary and intelligent...." *Pricepaul,* 540 F.2d at 424. There is wide agreement both on this point and on the applicable test: the record must affirmatively demonstrate that the plea was voluntary and intelligent under the totality of the circumstances.[4]

In comparison, the Second Circuit has adopted a standard of strict adherence to rule 11(c)(3) of the Federal Rules of Criminal Procedure, which directs Federal district courts to inform defendants of their *Boykin* rights before accepting guilty pleas. *United States v. Journet,* 544 F.2d 633, 636 (2d Cir.1976); *see also United States v. Blackwell,* 199 F.3d 623, 625 (2d Cir.1999); *but see* FED.R.CRIM.P. 11(h)(codifying the harmless-error test as of Aug. 1, 1983). However, because the strict standard is not constitutionally mandated, district courts in the Second Circuit have not always applied *Journet* when reviewing guilty pleas entered in state court. *See, e.g., Guerrero v. Harris,* 461 F.Supp. 583, 587 (S.D.N.Y.1978); *Perry v. Vincent,* 420 F.Supp. 1351, 1357–58 (E.D.N.Y.1976).

■ Thus, although the *constitutional* standard is whether the totality of circumstances demonstrates that a guilty plea is voluntary and intelligent, we must decide whether we will require strict adherence to *Boykin/Care* admonitions so as to render a nullity guilty pleas, when a military judge inadvertently neglects to render those admonitions in a Navy or Marine Corps court-martial. In reaching its holding in *Journet,* the Second Circuit noted: "[S]ince a guilty plea amounts to a conviction which may have most serious consequences for the accused ... the acceptance of the plea cannot be dealt with in a hasty or cavalier fashion." *Journet,* 544 F.2d at 636.

We are fortunate in the military justice system to have the luxury of sufficient time to carry out the providence inquiry in a measured and deliberate fashion. While nothing excuses the military judge's neglect of the duty to advise an accused completely, still, the instant case, as a whole, reflects the care envisioned by *Care* to ensure the guilty plea was voluntary and intelligent and that the acts of Appellant constituted the offenses to which he had entered his guilty pleas. Therefore, we decline to require the *Boy-*

---

4. *See, e.g.,* Third Circuit: *United States v. Vallejo,* 476 F.2d 667, 671 (3d Cir.1973); *Davis v. United States,* 470 F.2d 1128, 1132 (3d Cir.1972); Fourth Circuit: *Wade v. Coiner,* 468 F.2d 1059, 1060–61 (4th Cir.1972); Fifth Circuit: *Alexander v. Whitley,* 940 F.2d 946, 947 (5th Cir.1991); *Holloway v. Lynaugh,* 838 F.2d 792, 793–94 (5th Cir.1988); Sixth Circuit: *Riggins v. McMackin,* 935 F.2d 790, 794–95 (6th Cir.1991); *Pitts v. United States,* 763 F.2d 197, 200 (6th Cir.1985); Seventh Circuit: *United States v. Henry,* 933 F.2d 553, 559–60 (7th Cir.1991); Eighth Circuit: *Gonzales v. Grammer,* 848 F.2d 894, 897 (8th Cir. 1988); *Stacey v. Solem,* 801 F.2d 1048, 1050–51 (8th Cir.1986); *Todd v. Lockhart,* 490 F.2d 626, 628 & n. 1 (8th Cir.1974); Ninth Circuit: *United States v. Carroll,* 932 F.2d 823, 824–25 (9th Cir. 1991); *Rodriguez v. Ricketts,* 798 F.2d 1250, 1254 (9th Cir.1986); Eleventh Circuit: *McChesney v. Henderson,* 482 F.2d 1101, 1106–11 ([former] 5th Cir.1973); *United States v. Frontero,* 452 F.2d 406, 415 ([former] 5th Cir.1971)(cases decided by the former Fifth Circuit on or before September 30, 1981, are binding as precedent in the Eleventh Circuit); *see Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

*kin*/Care admonitions as a *sine qua non* for a valid guilty plea.

■ We further conclude that Appellant's guilty pleas were voluntary and intelligent within the meaning of *Boykin* and *Care.* Prior to the entry of his pleas, Appellant made a full and voluntary confession to investigating officers, only a month after his last sexual encounter with Beth D. Prosecution Exhibit I at 3. In his unsworn statement, Appellant stated:

> ACC: ... I know that what I have done is wrong. I accept full responsibility for it. That is part of the reason I gave my sworn statement at CID. [Criminal Investigation Division].
>
> I didn't want to hide it. I wanted to take full responsibility for it.... If you do something wrong, take responsibility for it. Don't run away from the problem. That's why I didn't ask for an attorney at NCIS. That's why I haven't tried to hide from anything I have done.

Record at 87. In a continuation of his unsworn statement, in response to examination by his counsel, Appellant apologized to Beth D. and her family and added, "I know what I did was wrong, and is inexcusable. I stand before everyone today to accept the responsibility for my own actions. I'm not going to run from it. I made a mistake and I know it." Record at 91. Appellant further entered into a detailed stipulation of fact and pretrial agreement. Prosecution Exhibit I; Appellate Exhibits IV and V.[5] Given all of the foregoing, we are convinced that Appellant's ultimate guilty pleas before the military judge were voluntary and intelligent.

### Sentence Appropriateness

In two related assignments of error, Appellant contends that the adjudged and approved sentence is inappropriately severe based upon: (1) allegedly disparate sentences that other Marines received for similar conduct and (2) the totality of the facts and circumstances of the case. We examine each in turn.

At trial, Appellant requested the military judge to consider the sentences meted out to other Marines for similar conduct.

The military judge declined.[6] On 27 June 2001, Appellant moved to attach documentation of the convictions of two other Marines, Lance Corporal (LCpl) Pianka and Corporal (Cpl) Rowan, to demonstrate alleged sentence disparity, and on 9 July 2001, we granted the motion. The documentation in relation to the former indicates a special court-martial conviction for sodomy, adultery, and wrongful use of an interactive computer to send patently offensive images to two females. The first two charges dealt with a young woman, E.W., while the third charge referred to E.W. and Beth D. LCpl Pianka received a sentence of 120 days confinement, forfeiture of $300.00 pay per month for 4 months, reduction to E–1, and a bad-conduct discharge. The convening authority approved the sentence, but suspended confinement in excess of 90 days for 12 months from trial. The documentation does not tie E.W. with Beth D. other than to name her in the same specification in Charge III. However, among matters submitted to the convening authority were various CID reports which make it abundantly clear that E.W. and Beth D. were friends who together sought out sexual liaisons with Marines.

The documentation in reference to Cpl Rowan demonstrates that upon conviction by special court-martial for sodomy with a child under 16 years of age, Cpl Rowan received a sentence of 60 days confinement, forfeiture of $500.00 pay per month for 2 months, and reduction to E–2. Again, while the attached documentation does not name the individual

---

5. Neither exhibit contains *Boykin/Care* advice or waivers. We commend to counsel that it would behoove accuseds' understanding of the import of same if they were included in such documents.

6. In *United States v. Ballard,* 20 M.J. 282, 286 (C.M.A.1985), our superior court concluded with original emphasis, "to hold that a trial or appel-late court may not consider the sentences in other cases would be folly. We simply hold that these courts cannot be *required* to consider such other sentences. Thus, if a court concludes that further edification in the area of sentence averages is unnecessary, we will respect that judgment."

with whom Cpl Rowan engaged in sodomy, the CID reports identify her as Beth D.[7]

■ We are *"required ... 'to engage in sentence comparison with specific cases ... in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"* United States v. Wacha, 55 M.J. 266, 267 (2001)(quoting United States v. Lacy, 50 M.J. 286, 288 (1999) and Ballard, 20 M.J. at 283). Such a comparison addresses three questions: (1) whether the cases are "closely related"; (2) whether the cases resulted in "highly disparate" sentences; and, (3) if the first two questions are answered in the affirmative, whether the Government can show a "rational basis" for the disparity. Lacy, 50 M.J. at 288; see also United States v. Kelly, 40 M.J. 558, 570 (N.M.C.M.R.1994).

■ In regard to whether the cases of LCpl Pianka and Cpl Rowan are closely related to Appellant's case, since the cases involved either the same minor and/or her close friend, the cases are more closely related to Appellant's than offenses of merely the same type, such as possession of the same type of contraband. See, e.g., United States v. Commander, 39 M.J. 972 (A.F.C.M.R. 1994); United States v. Thorn, 36 M.J, 955 (A.F.C.M.R.1993). However, LCpl Pianka and Cpl Rowan were not co-participants with Appellant in the same offense, i.e., time and place. Cf. United States v. Snodgrass, 37 M.J. 844, 849 (A.F.C.M.R.1993)(in dictum, court suggesting that the cases of two individuals who were jointly involved in the murder of Snodgrass' wife were closely related and the sentences highly disparate, but sentence comparison not undertaken because trials occurred in two different national sovereigns).

We conclude that, given that Appellant's involvement with Beth D. was independent of the involvement of the other young woman, the three cases are not closely related. However, even if the other cases were sufficiently related to Appellant's, LCpl Pianka's sentence while disparate was not highly disparate, in that each received a bad-conduct discharge and the difference in the period of confinement was only 1 year.

Moreover, even if the sentences of either or both LCpl Pianka and Cpl Rowan were deemed highly disparate, a rational basis for the disparity exists. In LCpl Pianka's case, first, E.W. was 16 years old. Therefore, there were no aggravating factors based on her age. While the difference in age between 15 and 16 can be as little as a day, the President, given the authority granted by the Congress, may legitimately draw a line at some age where sexual activity must be considered more serious. Second, the circumstances of the LCpl Pianka case are not set forth, such as, where the liaisons took place, for example, in a vehicle in contrast to the invasion of the sanctity of the home of Beth D. and her parents. Third, the record before us does not establish what LCpl Pianka's performance as a Marine may have been, e.g., commendations or discipline, while Appellant's performance as a Marine, as discussed below, was not stellar.

Similarly, in the case of Cpl Rowan, there was only one incident of fellatio in a vehicle, which distinguishes his case from Appellant's repeated visits to the home to engage in multiple episodes of both intercourse and both forms of oral copulation. Also, while Cpl Rowan was a noncommissioned officer, still, we have no evidence of his past performance as a Marine to compare or contrast to Appellant.

■ As for sentence appropriateness, an appropriate sentence results from an "individualized consideration" based upon "the nature and seriousness of the offense and the character of the offender." United States v. Rojas, 15 M.J. 902, 919 (N.M.C.M.R.1983)(citing United States v. Snelling, 14 M.J. 267 (C.M.A.1982)), aff'd, 20 M.J. 330 (C.M.A.1985). As for the seriousness of the offense, as suggested above, multiple sexual encounters of both oral copulation and intercourse occurred in the home,

---

7. The CID reports submitted for clemency refer to an additional liaison by E.W. and Beth D. with at least one other Marine in addition to Pianka and Rowan.

most of which occurred after Appellant knew Beth D. was underage.[8]

While the military judge ruled that evidence of Beth D.'s sexual history was inadmissible at trial, the clemency request materials highlight Beth D.'s promiscuity.[9] Given the multiplicity of Beth D.'s liaisons, as well as her insistent calling to Appellant, she could be considered the instigator. Nevertheless, neither her promiscuity nor instigation on her part sharply diminishes Appellant's culpability. It is precisely because some adolescents may be physically "mature" but psychologically immature (or even in the need of special intervention) that society deems them in need of protection of criminal deterrence so as to avoid not only their being exploited, but also other detrimental consequences, such as unwanted pregnancies or sexually transmitted diseases and psychological problems.

Further, our consideration of Appellant as an individual does not afford him relief. We are aware of the testimony given in mitigation, both by his mother and the father of a fellow Marine, and other matters submitted to the convening authority for clemency. For our sentence appropriateness analysis, we accept as true that Appellant suffered from being raised solely by his mother without the benefit of a father, that Appellant may suffer from attention deficit disorder and/or attention deficit/hyperactivity disorder, that he has been a loving and supportive son and sibling, that he is shy but gentlemanly, and that he took prompt and personal responsibility for his actions. Additionally, we are aware of his awards, including a letter of appreciation. Still, he was not recommended for promotion, because of both physical fitness test failure and the lack of maturity and suffered two impositions of nonjudicial punishment for failures to obey a lawful order and unauthorized absence. When we consider the totality of his character in comparison to the facts of his offenses, we conclude the sentence was not inappropriately severe.

## Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Senior Judge OLIVER and Judge HARRIS concur.

---

8. We do not know what the possibility of pregnancy may have been, since the record does not disclose if any form of birth control was utilized.

9. The military judge relied upon Military Rule of Evidence 412. Mil. R. Evid. 412 deals with nonconsensual sexual offenses. *See also United* States v. Stirewalt, 53 M.J. 582, 587–88 (C.G.Ct. Crim.App.2000). Here, all of the offenses were consensual. Nevertheless, for reasons stated in the text, we are well aware of Beth D.'s promiscuity.